for the day. William Attix v. Carrington Mortgage Services. We have Frederick Levin for the appellant and Adam Schwartzbaum for the appellee. And I'll give these parties a chance to get ready. And Mr. Levin, whenever you're ready, please proceed. May it please the Court, my name is Frederick Levin. I represent Appellant Carrington Mortgage Services, LLC. I'm going to divide my argument into two parts. First, I will address why the District Court erred in refusing to enforce the Arbitration Agreements Delegation Clause. Second, assuming for purposes of argument that the District Court properly reached the question, I will address why the Dodd-Frank Act Arbitration Amendment does not apply here. The District Court erred in several ways when it flatly refused to consider Carrington's Delegation Clause argument. First, in Henry Schein, the Supreme Court held that the District Court may not cast aside a Delegation Clause on the basis that the argument for arbitration is wholly groundless. Here, the District Court's order denying arbitration did exactly what Henry Schein did. The District Court's order denying arbitration cannot stand. Second, even in the event that the District Court was not bound by Henry Schein, the Dodd-Frank Arbitration Amendment does not embark enforcement of the delegation provision. At most, it bars only waiver of a judicial forum for certain specified statutory federal claims. It does not prohibit delegation to an arbitrator of the question of whether the Dodd-Frank Amendment is applicable. As Henry Schein instructs, the gateway issue of arbitrability is distinct from the underlying merits and presents a separate dispute between the plaintiffs. So we've got a Delegation Clause here, and what y'all are fighting about is the prohibited by law provision. Are we talking about arbitration as prohibited by law, or are we talking about delegation of arbitration as prohibited by law? Can you tell me why you're reading that unless delegation of arbitration is prohibited by law, is in fact the best reading? Okay, well that, let me turn directly to that. You're correct. Our reading is that the phrase, the qualifying phrase, unless prohibited by law, applies to the entire antecedent portion of the Delegation Clause. It has the meaning that the court suggests. It's only if delegation is prohibited. That reading is the natural reading of the clause. And plaintiff's reading, the alternative that it only applies to the word arbitration, is an unnatural reading. And the way we know this is to look at how the plaintiff briefed this question in the trial court below. And when you read their argument, you'll see that in order to get the meaning that they contend for, which Judge Branch just articulated, they changed the words of the clause. So I'm going to read to you what they argued to the trial court. This is quoting from ECF 38 at page 5. They say, the meaning of the Delegation Clause is plain. The arbitrator is required to decide what is subject to arbitration unless, now wait for it, here are the extra words, unless arbitration is prohibited by law. Adding the word arbitration a second time. To make the clause mean what they contend for, plaintiff recognized that the word arbitration needed to be inserted into the clause immediately following unless, and just before the qualifying phrase prohibited by law. Putting it, adding those extra words and changing it, changes the meaning of the clause so that it sounds a lot more like what they're arguing for and not how it reads. And it stands as an admission that the plain text of the clause does not support their proffered meaning. Reading the clause as agreed to in the arbitration agreement, not as plaintiffs would rewrite it, renders it consistent with the Delegation Clause in arbitration law generally, and avoids the circular meaning that plaintiff led the district court to adopt. The point of a Delegation Clause is not to decide whether or not the claim is arbitrable, but is instead to decide. Yeah, let me just cut you off and ask you a question about this. So, Henry Schein was about the question of whether the underlying dispute was a dispute covered by the arbitration agreement. This is about whether the arbitration agreement itself is enforceable under federal law. It seems like that's a question that the court's going to have to address one way or the other because you're asking the court to refer the matter to an arbitrator to resolve the dispute, right? No, I don't accept the premise that the court has to address. Well, let's think about it this way, I guess. So, and this is slightly different than the way you've phrased it, but I mean you've got two arbitration agreements. You've got the agreement to arbitrate the underlying issue and then you've got what you're referring to as the delegation agreement, which is the agreement to arbitrate the arbitrability of the underlying issue. How can a court enforce that delegation agreement and send the matter to arbitration without addressing the question of whether that agreement, the delegation agreement, is enforceable under federal law? Right, because the parties admit to, and it's undisputed here, to the making of the arbitration agreement, the making of the delegation agreement. You can't hear me? Yes. Sorry. You're slightly taller than the last gentleman who was there. The parties admit the making of the arbitration act says that you enforce it according to its terms. No, but then the statute that you're talking about here that the plaintiffs have raised says that you don't enforce certain arbitration agreements. So, I mean, I guess my point is how can, and I'm not necessarily disagreeing with you on the second point, but I don't see how we can avoid the delegation question, avoid the question of whether the delegation clause is enforceable as an arbitration clause when that's the clause you're asking us to enforce. The reason is twofold. One is that the question of whether the claim is arbitrable is a gateway issue, just like whether the arbitration clause covers the dispute, and it's one that can be delegated. The Supreme Court. But, yeah, I agree with you, completely agree with you, but the plaintiff's argument is that under this statute you can't do that. So, I guess my point is how can we just say we don't care what the statute says, we do it anyway. Don't we have to address this question? I think the short answer, I'll give you two answers. One is the arbitration act says that that issue itself, whether the Dodd-Frank amendment applies and bars the arbitrator, and the arbitrator can decide it. And nothing in Dodd-Frank prohibits an arbitrator from deciding this issue, correct? That was my second point. So, if you, and it's important here to understand we're talking about subpart three of the Dodd-Frank amendment, which is different from subpart one. Subpart three, the one that's at issue here, talks about barring a judicial forum for damages, claims, or other remedies for certain specified federal statutes. That would not be waived if the issue is delegated, because the arbitrator would decide whether or not it applies, and if it did, it would end the arbitration and send it back to court, and if it didn't, there would be no violation of the statute. But what is the bottom line conclusion that you are asking the district court to do? Aren't you asking the district court to say I'm not going to address this federal cause of action, I'm going to dismiss the case and send it to an arbitrator? I'm going to stay the case pending arbitration, and I'm going to send under the delegation clause the question of whether Dodd-Frank bars the arbitration of the underlying dispute to the arbitrator, who will then decide, if he decides that Dodd-Frank applies, and the law is out there in droves, that courts are supposed to trust arbitrators to make those decisions. If he decides that the Dodd-Frank amendment applies, he dismisses the arbitration, the case is reinstated in federal court. If he decides it does not, it goes forward because there's no violation of the statute. And let me just, just to be clear, let me point out the difference between subpart one and subpart three that gives you textual support for this approach, right? As I mentioned earlier, subpart three only bars waiver of form for certain judicial relief. Subpart one bars the insertion of a arbitration clause covering any controversy. The difference in the language is telling. In subpart one, right, which is inapplicable here, the any controversy would include a controversy over arbitrability. In subpart three, the only issue is precluding the resolution of the claim for damages or other relief for the statutory federal clauses of action. In other words, exactly the point you were making, Judge Brandt, Dodd-Frank doesn't prohibit on its face, even if you were to reach the question, it doesn't prohibit on its face the delegation clause to be enforced. You've got a... So I think I understand your point. I mean, so you agree, and correct me if I'm wrong, you agree that the question we have to answer is whether it violates E3 to delegate this matter or to send this matter to an arbitrator to determine whether the underlying cause of action should be arbitrated. So I would say if you decide that question, the answer is clearly that it does not prohibit it. No, I'm saying, I think you just argued that the reason we can send it to the arbitrator is that Section E3 doesn't prohibit us from sending it to the arbitrator. It does not. So we have to resolve the question of whether Section E3 prohibits us to send it from the arbitrator. I don't think you have to because I think the Arbitration Act prohibits, allows the delegation no matter what, but I agree with you if you believe you do have to decide it, the answer is very clear in Dodd-Frank. Okay, I'm still really confused, so confused. How do we send this issue to the arbitrator without answering a question about whether E3 prohibits us from sending the matter to the arbitrator? Because the Delegation Clause covers this dispute and the Delegation Clause, the qualifying language, unless prohibited by law, only applies if the delegation is prohibited. And I guess maybe that's where I'm finally catching up with you. If you interpret it that way, then you decide the question under the Dodd-Frank Act, as I just described, and say that Dodd-Frank Act Sub 3 does not prohibit the delegation. But that's not your main argument. Your main argument is we're not looking at Dodd-Frank. We're looking at the contract, and it says send this question to the arbitrator, stop, do not pass, go, send it to the arbitrator, and the arbitrator looks at Dodd-Frank. That is correct, and I'm saying if, you know, under Judge Brasher's point, if you feel you need to reach the question of whether Sub 3 prohibits the delegation, it clearly does not. That's your backup argument. May I raise the question of whether that was the argument that was made at the district court? It seems to me, as I read the district court briefing, was that the argument was more focused toward whether the entire arbitration agreement was proper, rather than this delegation clause. Has there been a shift in the argument? No, we raised the delegation clause from Docket 17. We submitted the delegation clause in 17-1, Sub A, Exhibit A, and we argued that the, in our motion to compel arbitration, that the delegation clause should be enforced. So, I think the other side is going to get up there, and they're going to say that E3 prohibits the enforcement of this delegation clause, and they're going to read E3 to say something to the effect of, let's just assume that this was what E3 said, delegation clauses that require arbitration of arbitrability in agreements between consumers and creditors relating to residential mortgage loans are unenforceable under federal law. Wouldn't we have to address that issue? How could we enforce the delegation clause without addressing whether it was prohibited for us? If the statute actually said that, I think your point would be fact. But, I mean, my point is, don't we have to decide in this case whether it says that or not? How can we avoid reaching that question about whether to interpret this provision to say that or not? I think you, I guess you're right. If you interpret the delegation clause to prohibit, to operate, the qualifier to operate, only if the delegation is prohibited, and then if you believe that... Look, I'm sure some really fancy lawyer came up with the idea of prohibited under law, but if something's prohibited under law, then it's prohibited whether the contract says it or not, right? So, I mean, my point is, if Congress passed a statute that said federal courts under no circumstances allowed to enforce delegation clauses in contracts like this... You would have to address it. You would have to address it. And if the statute said that, which it doesn't, then you would have to... It would be a really easy question to address in that circumstance. Have they argued, though, that the statute actually blocks delegation of this question? They have not answered that. They did not specifically challenge the delegation clause at all. And that, of course, is under your Parnell case essential. And that issue, in effect, the whole delegation issue has an effect in a way. But just to clarify, your primary position is we do not decide whether Dodd-Frank prohibits arbitration. The arbitrator decides that, correct? Yes. If your opposing counsel prevails upon us to read the delegation clause that we have to decide if arbitration is prohibited by a law, then your secondary argument is if we then turn to that issue of Dodd-Frank, Dodd-Frank does not prevent the arbitrability of this case, correct? That is true. And there's two layers to that. There's the layer that it doesn't prohibit the delegation to the arbitrator to make that call. And then there's a second point, which is that under sub 3, the prohibition doesn't apply unless Carrington is a creditor. And it doesn't meet the definition of creditor under section 1602. And the district court improperly relieved or excused one of the elements of the creditor status, which is that the obligation be payable initially to Carrington. It's undisputed that it wasn't. There was another lender. And so it didn't qualify for the creditor definition. And so if you have to reach the Dodd-Frank question, right, it fails on two grounds. One is the delegation point. It doesn't prohibit the delegation. And therefore, that should end it. It should go to the arbitrator. But even if you feel you have to reach the whole issue of whether it bars the underlying claim, it doesn't because Carrington isn't a creditor. All right. And I think you have preserved all of your arguments, and we've taken you over time. You still have some time for rebuttal, but I'm going to wrap you up right now and have Mr. Schwartzbaum and let you proceed. Thank you. Thank you, Your Honor. May it please the court. My name is Adam Schwartzbaum, and I, along with the Moskowitz Law Firm, have the honor of representing the plaintiff, Mr. William Addox, in this putative class action. The Dodd-Frank Act is one of the only pieces of legislation ever passed by Congress that prohibits arbitration of specific types of claims. In this case, those are claims that concern residential mortgage loans. Congress created this special exception to the general federal policy that favors arbitration to further the purposes of the Dodd-Frank Act, which were to crack down on abusive practices in the mortgage industry and to rein in the abuse and excess that nearly brought down our financial system. Although plaintiff's claims concern payments on his residential mortgage loan and the Dodd-Frank Act prohibits compulsory arbitration of such claims, Carrington, the defendant, nevertheless moved to compel arbitration. We believe that the court should affirm the district court's order denying the motion to compel because under the Dodd-Frank Act, the arbitration agreement cannot be interpreted or applied to bar the plaintiff from bringing his claims in federal court. Counsel, what in the Dodd-Frank Act prevents the arbitrator from deciding this issue? Your Honor, we have to, of course, go straight to the language of Section 1639CE3, which says that no provision of any residential mortgage loan and no other agreement between the consumer and the creditor relating to the residential mortgage loan shall be applied or interpreted so as to bar a consumer from bringing an action in an appropriate district court of the United States for damages or other relief in connection with any other federal law. In this case, the arbitration agreement at issue is contained in the terms and conditions of an agreement between Mr. Addix and Speed Pay, which is a third-party payment processing service. The district court found, and we are not challenging now, that Carrington was a party to that agreement. That agreement very clearly relates to the residential mortgage loan because it contains the terms and conditions by which the plaintiff, Mr. Addix, was required to make his payment of his residential mortgage loan. This is the agreement that governs how he makes that payment. So that agreement clearly relates to the residential mortgage loan, and it has an arbitration provision. I think they're going to fight you on the creditor piece. And I'm happy to get to that in a moment, Your Honor. But just to answer your initial question, what this statute says is that that agreement can't be applied or interpreted to bar a consumer from bringing their claim in federal court. Under their interpretation of this statute, we wouldn't be able to do that because the arbitration agreement would require us to go to the arbitrator and have the arbitrator to decide whether or not Dodd-Frank applies. But arbitrators can decide questions of arbitrability. We don't dispute that, Your Honor, but here we challenge that specifically in our opposition. We said that the delegation clause itself, not just the arbitration agreement, the delegation clause was not enforceable because of Dodd-Frank. We specifically called it out. And there's a line of federal cases in the Second, the Third, and the Fourth Circuit, several cases issued after Henry Schein, which said that as long as you call out the arbitration provision specifically like we did, then you can attack it for the same reasons you would attack the arbitration agreement as a whole. And here, that reason, as we said to the district court, was the Dodd-Frank Act. Are you saying that you win even if we agree that the delegation clause, the way to read it is that questions of arbitrability are submitted to the arbitrator unless delegation of those types of questions is prohibited by law? Or do you only win if we say the natural reading is that these questions go to the arbitrator unless arbitration is prohibited by law? I think we win, Your Honor, because there isn't what the Supreme Court has said for this question since first options in 1985 reaffirmed in Rent-a-Center by Justice Scalia. What the Supreme Court has said for decades is that normally it goes to the, the arbitration is something that's decided by the court. And in order to get past that, I'm sorry, what the court has said is that when you specifically challenge that question, it needs to be clear and unmistakable. I'm sorry. There has to be clear and unmistakable evidence that you don't want the court to decide that question. And here, what we have at best for the defendant are two reasonable interpretations, one that was adopted by the district court who said their interpretation was actually frivolous, and one that's being interpreted by counsel today. If there are two reasonable ways to apply the arbitration provision, then that isn't clear and unmistakable evidence that we agreed to delegate this to an arbitrator. And under Supreme Court precedent, that means that it is for the district court to decide that gateway question of arbitrability. If it was so, if the plain language was so disputable, then why did you all insert the word arbitration when you described the delegation clause to the district court? Well, I think that that's the plain and natural reading of that clause. I think when it says the arbitrator shall decide what is subject to arbitration unless prohibited by law, it means the arbitrator can decide that issue unless the arbitrator is prohibited by law from doing that. Well, but as I understand it, it was rephrased as unless arbitration is prohibited by law, which I think is actually pretty different. That seems to be the crux of the dispute that you have. Well, I think that, I mean, I think if you read the language of the arbitration clause, the delegation provision. I've read it. Yes. I think that there's a natural reading. Take out the word arbitration. I think that a natural reading of that clause is that the arbitrator can only decide what is subject to arbitration when he's not prohibited by law from doing so. But I guess what I'm asking is if that's the natural reading, then why would you need to insert that word to get the district court to agree with you that that was the natural reading? You know, I don't think that our, what we, I think the district, I think the, regardless of what we said to the district court, the natural reading of the clause today by this court should be that when the plaintiff, as we did here, challenges the arbitration provision and says this can't be delegated and it can't be arbitrable because it's prohibited by law, it now is up to the district court to make that determination. But I don't even think the court needs to reach that question because even if the language, unless prohibited by law, wasn't in this arbitration clause, even if this was an absolute delegation provision, we still have the ability under this court's precedent and Supreme Court precedent to raise a direct challenge to the delegation clause based on the same principles that we would challenge the arbitration agreement as a whole. And in this case, that challenge was made based on the Dodd-Frank Act. And so under the Gibbs case in the Fourth Circuit, McDonald in the Third Circuit, Gingras in the Second Circuit, several of which specifically held that Henry Schein was inapplicable to this analysis, we would submit that because we specifically challenged the arbitration clause and because one of the reasons that we raised as a challenge was the Dodd-Frank Act, the district court had what this court has called jurisdiction to determine whether or not this claim is arbitrable. Let me ask you this. I mean, I agree with you that Henry Schein is distinguishable because it has nothing to do with a question like this. That was a question about whether the arbitration clause applied to the underlying dispute, not whether the arbitration clause was enforceable under federal law. Here's the question I have. So I think we have to go to E3 and ask ourselves whether the delegation clause is invalid under E3 because that's the clause that we're being asked to enforce. And this is what E3 says. It says no provision of any residential mortgage loan or any extension, so no provision, no arbitration provision, no delegation provision, no provision no matter what you call it, shall be applied or interpreted so as to bar a consumer from bringing in action in appropriate district court of the United States. And my question I guess is, is what the defendant in this case asking for the application or interpretation of a provision to bar a consumer from bringing an action in an appropriate district court, or is it not? I believe it is, Your Honor. I believe that they are taking an arbitration agreement that is in an agreement between the consumer and the creditor relating to the residential mortgage loan, and they're saying that that agreement should be applied to compel arbitration and take us out of district court. How does it necessarily, and your friend on the other side of the case I think made a good point when he said, look, we're not necessarily asking as an enforcement of this delegation clause to dismiss the case, to throw you out of court. We're asking for a third party, this arbitrator, to determine whether you should be in court or not. How does that, I mean, if you look at this text, does that bar a consumer, does that request bar a consumer from bringing an action, or is that something different? We believe that it would. We believe that when the court enters an order compelling arbitration, we are now prevented from bringing our claim in federal court, and that would be a direct violation of the intent of this act, which is to assure that these types of claims don't get sent to arbitration, where there's a class action waiver, where consumers can't vindicate their rights concerning these residential mortgage loans. That was the purpose of Congress in passing this act, and so we believe that the answer is clear that in this situation it would be prevented. But I think that we're somewhat melding the two analyses, and I think that they're sort of separate. One question the court needs to ask is, was it proper for the district court to consider arbitrability in light of the delegation clause? And we think the answer to that is clearly yes for multiple reasons, based on the language of the clause itself and based on the challenge that we made to it. The second question I think we then need to ask is, does Dodd-Frank actually prevent arbitration of these claims? And to that question, I think the answer is also yes. I want to back you up for a second before you get to that. It seems that there are two ways that we can interpret Dodd-Frank. One, it bars even delegation of the arbitrability question for these types of claims, and two, that it doesn't, but it does have a substantive meaning about which claims ultimately can be arbitrated. Why wouldn't we read... In order to read that statute in harmony with the Federal Arbitration Act, why wouldn't we presume that the reading that allows those two statutes both to apply is the correct one? That although it does have a substantive bar on certain claims actually going to arbitration, it doesn't actually have an implicit workaround of the delegation instruction? I think the answer for that, Your Honour, is because it says here in this Act that no arbitration provision shall be applied or interpreted to bar a consumer from bringing an action in district court, and the practical effect of an order-compelling arbitration in this case would be to bar us from bringing this action in an appropriate district court of the United States. But I think, as Judge Brasher said, we could either conclude that this would be barring the action from being brought or we could conclude that this would be allowing the arbitrator to decide whether this action could be brought in district court. Right? I don't think so, Your Honour, and the reason for that is because the practical effect, I think, is the same. If you're sending it to the arbitrator... Only if you assume that the arbitrator will decide it incorrectly and that you have the correct statutory interpretation and that the arbitrator will decide it incorrectly. I think that if you look at the way that this Act is supposed to be interpreted in the Code of Federal Regulations, which is Section 1026.36, no waivers of federal statutory causes of action, it says, a contract or other agreement relating to a consumer credit transaction secured by a dwelling may not be applied or interpreted to bar a consumer from bringing a claim in court pursuant to any provision of law for damages or other relief in connection with any alleged violation of any federal law. I think that that... I think the language of the statute, I think the way that the Code of Federal Regulations interprets that statute is to say these claims should be before a federal judge and there should be no provision of any agreement which should allow a court to send that to an arbitrator to decide. We think that that's the intent of Congress. It's very clear in the statute and the regulations, and we think that allowing this delegation question to be decided by an arbitrator would be contrary to the intent of the statute. What about the fact that putting the delegation clause to a side, the arbitration agreement incorporates the AAA rules, and why is that not unmistakable evidence that the parties intended to delegate questions of arbitrability? Your Honor, in Henry Schein, what the court said was that we must interpret the FAA as written,  and in the NASDAQ-OMX case, there was the incorporation of AAA rules, but there was also... this is a Second Circuit case, but there were also other language that created some ambiguity about whether or not there was delegation. That's precisely the situation we have here, where, yes, we incorporated the AAA rules, but we also have a provision which specifically says delegation is... that the arbitrator shall decide what is subject to arbitration unless prohibited by law. But you've said there are two reasonable interpretations of that delegation provision, so to the extent there's an ambiguity, the presence of the AAA rules would seem dispositive. Well, we don't believe that it is ambiguous. In fact, we think that our interpretation... But you would concede then that if we decided it was ambiguous, the presence of the AAA rules might tip the scale. I don't think so, Your Honor, because I think the language of the contract is what the Supreme Court has told us to look at, and the language of the contract is clear that the arbitrator... No, I said if we decide that the language is ambiguous, how would we deal with the AAA rules incorporation? Thank you, Your Honor. I think that if this court decides the language is ambiguous, then there isn't, under the Supreme Court precedent, there isn't clear and unmistakable evidence of an intent to have arbitrability decided by the arbitrator, and therefore the court can decide... How do you deal with the AAA rules incorporation is my question if we decide that the delegation provision itself was ambiguous? You then... And then we then start looking at the AAA incorporation. I think that, like the court said in NASDAQ, and as well as... And there's another case that was cited by them in the Fifth Circuit, excuse me, by the defendant, Arnold v. Homeaway. The court said, we do not foreclose that a contract might incorporate the AAA rules, but nonetheless, otherwise, muddy the clarity of the party's intent to delegate, and it is not the case that any mention in the party's contract of the AAA rules trumps all other contract language. So I believe you have to look at the contract as a whole, and if you find ambiguity, then there isn't clear and unmistakable evidence of an intent to delegate. Thank you, Mr. Schwartzbaum. Thank you, Your Honor. Mr. Levin, you have five minutes left. So I'd like to respond to the opposing counsel's arguments, but in a way that also answers some of the questions, Judge Branch, that you raised, which has to do with the effect of sub 3 and whether it can be read in the provision that bars the underlying statutory claim on the issue of delegation. Mr. Levin, it's still a little hard to hear you, and I know you can all hear me. I'm sorry. I'll bend over. I'm sorry. So the plain point is, first of all, setting the case, the delegation piece of the case, the arbitrability piece of the case, to be delegated to the arbitrator does not deprive the plaintiff of a judicial forum. The case is in court right now. At most, what would happen, if the court agreed with our position, is there would be a reversal, a remand with instructions, which would result in a stay under Section 3 of the Arbitration Act of the case pending the arbitrator's decision on the arbitrability question. So the plaintiff is in court. The issue that the arbitrator would decide is the threshold question of whether Dodd-Frank applies at all. For example, Judge Branch raised the issue of creditor. If Carrington is not a creditor, then Sub 3 doesn't have any application at all, and the case can proceed in arbitration. So the delegation of the threshold question to the arbitrator doesn't deprive them of any right that they're entitled to under Dodd-Frank. It merely delegates the question of who decides whether the Dodd-Frank Amendment actually applies here. If the court says it does apply, that's the... I'm sorry, if the arbitrator says it does apply, that's the end of the arbitration. Goes back to state court, the stay is lifted, the case proceeds. If, on the other hand, the Dodd-Frank Act doesn't apply, then the case proceeds in arbitration, but there's no violation of Sub 3. So that's how you synthesize the Federal Arbitration Act, Judge Grant, with the command of the Dodd-Frank Amendment. And there's rules of statutory construction or legion that when you can synthesize two statutes that appear to be in tension, that's how you decide the case. So I think, Judge Grant, your point is well taken. As for the clarity or lack of clarity of the delegation clause itself, a point that opposing counsel came back to, it's very clear that there's only one proper reading of the statute, one natural reading, which is that the prohibited by law qualifier modifies the entire antecedent phrase, not just the word arbitration. That's why, of course, they had to add the word arbitrator twice in order to get the meaning that they were contending for. The only natural reading is the one that's before the court in the words of the agreement, and that means that the qualifier operates only if the delegation is prohibited, not if you examine Dodd-Frank. Under your interpretation, is that language just surplusage? Because if delegation were prohibited by law in the first place, the parties couldn't agree to delegation by contract, right? The short answer is I draft arbitration clauses as part of my career, and I would not have put that phrase in there simply because it creates issues that don't need to be created. It is surplusage for the reasons you just said. But if you're to give it meaning, it has to read in the English language, and the English language reading of it is that that clause modifies the antecedent provision, even if some other provision of law would have supplied the same result. It still doesn't make the clause ambiguous. But if it's just surplusage, why would, as between two readings, we read it to be a nonsense phrase that doesn't do anything? Because the other interpretation isn't a reasonable reading. It doesn't. It renders the clause entirely circular because under that reading, it renders the clause circular because the scope of the arbitrator's purview for arbitrability questions is zero. No, no, that's not true. The main way these delegation clauses get enforced is the question is not whether the arbitration clause is enforceable as a matter of law. The question for the arbitrator and the delegation clause is whether the arbitration clause applies to the dispute, and that was the issue in Schein. Well, the focus of the delegation clause very often is ones of enforceability, validity, claims that it's unconscionable. All of those kinds of disputes, right, would have no place in the arbitration clause. And the point is the natural reading of the language is that it qualifies the unless prohibited by law qualifies the entire antecedent provision, and the reason we know this is in order to get the meaning that the plaintiffs contend for, they had to add the extra word. Well, I don't know. That just sounds... I mean, they probably shouldn't have done that, but I don't know that that necessarily proves anything. I guess my concern is that of between the two readings, one of them gives some meaning to this clause and the other gives no meaning to the clause, and it just seems very odd to me that we would choose to read it in a way that gives it no meaning whatsoever. Well, the meaning that it has is that it is... Our delegation is permitted unless delegation is prohibited by law. Yeah, but, I mean, that's like... I mean, that's like any agreement. You can have an agreement, hello, this agreement is to violate the antitrust laws unless prohibited by law. I mean, right, it just doesn't mean anything. But the alternative reading is also unnatural because it violates the basic principle that the way you challenge a delegation clause is by making a specific challenge to the delegation clause. Here, their challenge is, in effect, that arbitration generally is prohibited. The challenge to the arbitration clause as a whole, not to the delegation clause. So it seems to me that when you add those two things together, the natural way to read this clause is to say that unless prohibited by law qualifier applies to the entire antecedent phrase, right? And that it then operates only if the delegation is prohibited. You then look to the Dodd-Frank Act and you see sub 3 that it is not prohibited for the reasons we talked about earlier, which is whatever the arbitrator decides about arbitrability, the underlying statutory claim is preserved. It will either be heard in court or it will be heard in arbitration, right? And it'll only be heard in arbitration if there's a finding that the Dodd-Frank Act doesn't apply, for example, for the reason that Carrington isn't a creditor. The operation of the delegation clause is copacetic with the operation of the Federal Arbitration Act, and that is the natural way to bring the two statutes together and avoid this tension. Thank you, Mr. Levin. Thank you both. We have your case under submission.